**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN P. DIEFENDERFER AND HEIDI B. DIEFENDERFER, <br><br> Plaintiffs, <br><br> v. <br><br> LORI DRING AND NANCY ASARO, <br><br> Defendants. | CIVIL ACTION NO. 3:15-CV-0500 <br><br> (JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is a Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendants Lori Dring and Nancy Asaro ("Defendants") (Doc. 8). Count I of the Amended Complaint seeks an order directing Defendants to grant Plaintiffs a permanent easement right pursuant to a Settlement Agreement that the two parties entered into to resolve a prior action. Count II sets forth an alternative claim for declaratory relief regarding the ownership of certain property, including an order that Plaintiffs have a prescriptive easement over Defendants' property. Count III is pled in the alternative to Count I, and seeks damages instead of specific performance. Defendants argue that Counts I and III should be dismissed because there are conditions precedent to Defendants' obligation to Plaintiffs under the Settlement Agreement that have not yet been satisfied. Defendants also argue that there has been a material breach of the Settlement Agreement, which excuses them from further performance to Plaintiffs under the Agreement. Furthermore, Defendants argue that Count II is barred by *res judicata* and collateral estoppel. Because this Court finds that there were no conditions precedent to Defendants' obligation to Plaintiffs under the Settlement Agreement, the motion to dismiss Counts I and III will be denied. However, because this Court finds that Count II is barred by *res judicata* and collateral estoppel, and further, that Plaintiffs have failed to adequately plead a prescriptive

easement claim, the motion to dismiss Count II will be granted. Plaintiffs shall have twenty-one (21) days from the date of entry of this Memorandum to file a Second Amended Complaint to properly plead their claim for a prescriptive easement against Defendants. Otherwise, the claim will be dismissed with prejudice.

## I. Background

The facts as set forth in the Complaint are as follows:

Plaintiffs John P. Diefenderfer and Heidi B. Diefenderfer ("Plaintiffs" or "Diefenderfers"), husband and wife, are both citizens of the Commonwealth of Pennsylvania. (Doc. 4, Am. Compl. ¶ 1.) Defendants Lori Dring and Nancy Asaro are both citizens of the State of New Jersey. (*Id.* ¶¶ 2, 3.) At all relevant times, Plaintiffs were the owners of certain real property in Wayne County, Pennsylvania, as described in Exhibit A of Plaintiffs' Amended Complaint. (*Id.* ¶ 7; *see also* Doc. 4-1, Pls.' Ex. A, Description of Plaintiffs' Premises.) Plaintiffs and Defendants in this action, by and through their respective counsel, executed a Settlement Agreement dated August 28, 2006 (the "2006 Settlement Agreement") and thereafter executed an Amendment to the Settlement Agreement dated August of 2007 (the "2007 Amendment," the 2006 Settlement Agreement and the 2007 Amendment being referred to collectively herein as the "Settlement Agreement"). (Doc. 4, Am. Compl. ¶ 8; *see also* Doc. 4-2, Pls.' Ex. B, Settlement Agreement.) The parties entered into the Settlement Agreement to resolve a prior action entitled *Ariel Land Owners, Inc. v. Lori Dring & Nancy Asaro*, No. 3:01-cv-0294 (M.D. Pa.) (the "Prior Action").

In the Prior Action, Ariel Land Owners, Inc. ("ALO") sought a determination that ALO owned certain land, including land covered by the waters of Lake Ariel. (Doc. 4, Am. Compl. ¶ 9.) Defendants Lori Dring and Nancy Asaro filed an Answer and Counterclaim, followed by a Third Amended Counterclaim against ALO and others, including the

2

Diefenderfers. (*Id.*) Count V of the Third Amended Counterclaim was asserted against ALO and certain property owners[1] along the western shore of Lake Ariel, including the Diefenderfers. (*Id.*; *see also* Doc. 4-3, Pls.' Ex. C, Prior Action's Amended Complaint, Answer and Third Amended Counterclaim.) Defendants alleged that since they own a narrow strip of land between the land of the cottagers along the western shore and the waters of Lake Ariel (the "Western Shore Strip"), the west shore owners (and ALO) have no right to cross this strip to reach the waters of Lake Ariel or to use this strip of land for boat houses, docks, or other purposes. (Doc. 4, Am. Compl. ¶ 9.) The claims against the west shore owners, including the Diefenderfers, were resolved in the context of the prior federal litigation pursuant to the terms of the Settlement Agreement. (*Id.*) Other issues, not involving the Diefenderfers, were resolved at trial. (*Id.*)

Plaintiffs allege that they have "fully performed under the Settlement Agreement" by releasing the Defendants from liability pursuant to Section 6 of the 2006 Settlement Agreement. (*Id.* ¶ 11.) Section 6 is the "mutual release" provision of the Settlement Agreement, where both Plaintiffs and Defendants in this action agreed to release each other from any and all claims arising out of or relating to the Prior Action and the Western Shore Strip:

> 6. The Property Owners [Plaintiffs] on the one hand; and Dring/Asaro on the other hand, do hereby release the other party and such party's predecessors in title, successors and assigns from any and all claims arising out of or relating to the Lawsuit and the Western Shore Strip including but not limited to claims for compensatory damages, punitive damages, trespass, attorneys fees, or costs of court.

(Doc. 4-2, Pls.' Ex. B, Settlement Agreement, § 6.)

---

[1] A similar action was filed in this Court by certain of these property owners who assert themselves to be the owners of real property on the western shore of Lake Ariel and Mud Pond, a body of water in Lake Township, Lackawanna County, Pennsylvania (the "Lake" or "Lake Ariel"), also against Defendants Lori Dring and Nancy Asaro. *See Gillespie, et al. v. Dring & Asaro*, No. 3:15-cv-00950 (M.D. Pa.).

3

However, Plaintiffs claim that Defendants have failed to fully perform under the Settlement Agreement, thereby breaching the Agreement, by failing to provide to Plaintiffs an easement right over a portion of the Western Shore Strip designated as the "North Strip" pursuant to Section 3 of the 2006 Settlement Agreement. (Doc. 4, Am. Compl. ¶ 12.) Section 3 of the Settlement Agreement reads, in relevant part, as follows:

> 3. Dring/Asaro agree to execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, *subject to a permanent easement to be granted in favor of the Property Owners [Plaintiffs]* for access over the North Strip and to maintain docks and/or boathouses on the North Strip. This permanent easement is not intended to grant the Property Owners [Plaintiffs] any rights in or over any lands owned by ALO, or any interest in Lake Ariel owned by ALO.

(Doc. 4-2, Pls.' Ex. B, Settlement Agreement § 3 (emphasis added).)

Two other provisions of the Settlement Agreement are also worth noting. First, Section 5 of the Settlement Agreement provides that ALO shall execute and deliver four (4) lake rights and a permanent easement to Defendants in recordable form. Section 5 reads, in relevant part, as follows:

> 5. ALO shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form, which transfer to Dring/Asaro the following:
>
> (a) Four (4) lake rights which will permit Dring/Asaro to construct and maintain four (4) docks along and into the water at the shore line of the Swingle Tract located within Mud Pond to be used for the launching and docketing of watercraft, however these lake rights will not permit Motorized Boats (as hereafter defined) to be operated on Mud Pond or in the channel, or trolling motors to be operated in the channel.
>
> (b) A permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel, at the end of Cardinal Lane (the "Dock Area") described as a rectangular shape of approximately thirty (30') feet in width along the shoreline, and two hundred (200') feet in depth above the shoreline.

(*Id.* § 5.) Second, Section 15 provides for a mutual exchange of all deeds referenced in the Settlement Agreement:

> 15. All Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience [sic] time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof.

(*Id.* § 15.)

4

Count I of Plaintiffs' Amended Complaint seeks specific enforcement of the Settlement Agreement, including an order directing Defendants to grant Plaintiffs alleged easement rights as outlined in Section 3 of the Settlement Agreement. Count II sets forth an alternative claim for an order: (1) determining that Defendants acquired no interest in the Western Shore Strip pursuant to quitclaim Deeds from Wells College and from Rennselaer Polytechnic Institute ("RPI"); (2) declaring that Plaintiffs acquired title to Plaintiffs' premises[2] free and clear of any interest of Defendants therein; and (3) declaring that any interest Defendants might have in the Western Shore Strip is subject to a prescriptive easement in favor of Plaintiffs. Count III, which seeks damages, is pled in the alternative to Counts I and II: Plaintiffs allege that as a result of Defendants' failure to perform their obligations under the Settlement Agreement, the value of Plaintiffs' premises have been diminished.

This Court has jurisdiction under 28 U.S.C. § 1332(a), diversity of citizenship. Therefore, this Court will apply the law of Pennsylvania. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement

---

[2] The land that Plaintiffs purport to own is described in Exhibit A of the Amended Complaint. (*See* Doc. 4-1, Pls.' Ex. A.)

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998

F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants advance a series of arguments seeking dismissal of the Amended Complaint in its entirety. For the reasons that follow, Defendants' motion to dismiss will be granted in part and denied in part.

### A.     Count I - Specific Performance of the Settlement Agreement

Count I of the Amended Complaint seeks specific enforcement of the Settlement Agreement, including an order directing Defendants to grant Plaintiffs the easement right referenced in Section 3 of the Settlement Agreement. Section 3 provides, in relevant part, as follows:

> 3.     Dring/Asaro agree to execute and deliver to ALO a quit claim deed of all of their right, title and interest in and to the North Strip, *subject to a permanent easement to be granted in favor of the Property Owners [Plaintiffs]* for access over the North Strip and to maintain docks and/or boathouses on the North Strip. . . .

(Doc. 4-2, Pl.'s Ex. B, Settlement Agreement, § 3 (emphasis added).)

Defendants argue that Plaintiffs have not alleged the satisfaction of conditions precedent to Defendants' obligation under this provision. Specifically, Defendants argue that their obligation to execute and deliver to ALO a quitclaim deed subject to an easement for Plaintiffs is *conditioned* upon ALO's obligation to execute and deliver to Defendants instruments of conveyance transferring certain lake rights and easements to Defendants, as set forth in Section 5 of the Settlement Agreement, which provides, in

7

relevant part, as follows:

> 5. ALO shall execute and deliver to Dring/Asaro instruments of conveyance, in recordable form, which transfer to Dring/Asaro the following:
>
> (a) Four (4) lake rights which will permit Dring/Asaro to construct and maintain four (4) docks along and into the water at the shore line of the Swingle Tract located within Mud Pond . . .
>
> (b) A permanent easement over the water and a parcel of land at the eastern shore of Lake Ariel, at the end of Cardinal Lane (the "Dock Area") . . .

(*Id.* § 5.) In support of this argument, Defendants cite to Section 15 of the Settlement Agreement, which provides for the mutual exchange of all deeds referenced in the Settlement Agreement:

> 15. All Deeds and other instruments referred to herein shall be exchanged by the parties at a mutually convenience [sic] time within 30 days after obtaining the subdivision approval set forth in Section 2 hereof.

(*Id*. § 15.) Defendants argue that Section 15's requirement that all deeds be exchanged by the parties at a mutually convenient time shows that ALO's obligation to convey certain rights to Defendants was a condition precedent to Defendants' obligation to Plaintiffs, and since ALO never conveyed certain deeds to Defendants, then Defendants need not convey any deed to ALO subject to an easement for Plaintiffs. Defendants argue that because Plaintiffs failed to allege the satisfaction of the conditions in Section 5, they have failed to allege facts sufficient to demonstrate any obligation by Defendants to Plaintiffs pursuant to Section 3.

A condition is defined as an "act or event which must occur before a duty of performance under an existing contract becomes absolute." *Castle v. Cohen*, 840 F.2d 173, 177 (3d Cir. 1988) (citation and internal quotation marks omitted). If a contract contains a condition precedent, then the condition precedent must occur before a duty to perform under the contract arises. *Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 437 Pa. Super. 41, 46 (1994). Although the parties to a contract need not utilize any

8

particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention. *Id.* at 47; *see also Castle*, 840 F.2d at 177 (explaining that under Pennsylvania law, a condition precedent must be expressed in clear language or it will be construed as a promise) (citing *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1016 (3d Cir. 1980)); *Shook of W. Va., Inc. v. York City Sewer Auth.*, 756 F. Supp. 848, 851, 854 (M.D. Pa. 1991) ("[L]anguage in a contract not clearly identified as a condition precedent is presumed not to be one. . . . an act or event in a contract must not be construed as a condition precedent unless it is expressly made so or unless it clearly appears to have been the intention of the parties.") (citing *Mellon Bank N.A.*, 619 F.2d at 1016). Because the failure to comply with a condition precedent works a forfeiture, such conditions are disfavored. *Castle*, 840 F.2d at 177 (citing Restatement (Second) of Contracts § 227 comment b (1981)).

Here, there is no clear language indicating that there is a condition precedent that must be satisfied in order for Defendants to convey a quitclaim deed to ALO subject to an easement in favor of Plaintiffs. It is unclear as to whether the requirement that ALO convey certain lake rights and easements to Defendants as set forth in the Settlement Agreement is a condition precedent to Defendants' obligations to convey to ALO a quitclaim deed to the North Strip subject to a permanent easement to be granted in favor of Plaintiffs. First, there is no language in Section 3 that makes clear that Defendants' obligation to provide an easement for Plaintiffs is contingent upon any of ALO's obligations to Defendants in the Settlement Agreement. Although Section 15 of the Settlement Agreement requiring the mutual exchange of all deeds *could* be construed to mean that Defendants' obligation to convey rights to ALO subject to an easement for Plaintiffs is conditioned upon ALO's obligation to convey certain rights to Defendants, it is not *clear* that was the intent of the parties. There is no language in Section 15 clearly noting that any exchange is conditioned upon any other exchange. Nor is there any language anywhere else in the Settlement Agreement explaining that Defendants'

9

obligation under Section 3 is conditioned upon ALO's obligation to Defendants in Section 5. To be sure, Section 15 could reasonably be read as simply making clear that the exchange of deeds must take place "within 30 days after obtaining the subdivision approval set forth in Section 2." (Doc. 4-2, Pls.' Ex. B, Settlement Agreement § 15.) Section 15 could also reasonably be read as simply making clear that each time an exchange of deeds takes place, it must take place at a mutually convenient time for all parties. Therefore, because it is not clear that Defendants' obligation to Plaintiffs in Section 3 is conditioned upon ALO satisfying its obligation to Defendants in Section 5, ALO's satisfaction of its obligations to Defendants will not be construed as a condition precedent to Defendants' obligations to Plaintiffs. *See Castle*, 840 F.2d at 177.

Plaintiffs also argue that even if Defendants' obligation to Plaintiffs under Section 3 of the Settlement Agreement was conditioned upon ALO's obligation to Defendants under Section 5, the satisfaction of that condition may be excused when the non-occurrence of the condition precedent would cause a disproportionate forfeiture. *See Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 437 Pa. Super. 41, 48 (1994) (explaining that to the extent that the non-occurrence of a condition precedent would cause a disproportionate forfeiture, a court may excuse the non-occurrence of a condition, unless its occurrence was a material part of the agreed exchange). However, because this Court finds that ALO's obligation to Defendants under Section 5 was not a condition precedent to Defendants' obligation to Plaintiffs under Section 3, this Court need not address this argument.

Defendants further argue that they are excused from performing under the Settlement Agreement because there has been a material breach of the Settlement Agreement which excuses them from further performance or liability. *See Berkowitz v. Mayflower Secs., Inc.*, 455 Pa. 531, 534-35 (1974) (explaining that the plaintiff's material breach of the contract relieved the defendant from any duty thereunder). Defendants argue that the failure of ALO to perform under Section 5 of the Agreement, which requires ALO to convey certain lake rights and easements to Defendants, excuses any

10

obligation that Defendants might otherwise have to convey to ALO a quitclaim deed subject to a permanent easement in favor of Plaintiffs. However, Plaintiffs have fully performed under the Agreement by releasing Defendants from any and all claims arising out of or relating to the Prior Action and the Western Shore Strip. (*See* Doc. 4-2, Pls.' Ex. B, Settlement Agreement § 6.) There has been no material breach of the agreement by *Plaintiffs* that would excuse Defendants from performance to them. The only material breach Defendants have suggested was by ALO, not Plaintiffs. Therefore, Defendants are not excused from performing their obligation to Plaintiffs under Section 3 of the Settlement Agreement.

Because there were no conditions precedent to Defendants' obligation to Plaintiffs under the Settlement Agreement and because there has been no material breach of the Settlement Agreement by Plaintiffs, Defendants' motion to dismiss Count I will be denied.

**B.     Count II - Declaratory Relief**

Count II of the Amended Complaint sets forth an alternative claim for an order: (1) determining that Defendants acquired no interest in the Western Shore Strip pursuant to quitclaim deeds from Wells College and from RPI, (2) that Plaintiffs acquired title to Plaintiffs' premises free and clear of any interest of Defendants therein, and (3) that any interest Defendants might have in the Western Shore Strip is subject to an easement by prescription in favor of Plaintiffs. This Court will address each one of these arguments in turn.

   **1.     Defendants' Interest in the Western Shore Strip**

Plaintiffs seek an order from this Court determining that Defendants did not acquire any interest in the Western Shore Strip pursuant to two (2) quitclaim deeds: (1) a quitclaim deed from Wells College dated December 6, 2001, and recorded in Deed Book 1931 at page 204 (the "Wells Deed") and (2) a quitclaim deed from RPI dated November 2, 2001, and recorded in Deed Book 1931 at page 209 (the "RPI Deed"). (Doc. 4, Am. Compl. ¶ 26; *see also* Doc. 4-7, Pls.' Ex. G.) The predecessor of record to

11

Wells College and RPI is Edward W. Weston et ux., who retained an interest in certain land along the west shore of Lake Ariel pursuant to his deed to Joel Jones dated January 21, 1862, and recorded in Deed Book 30 at page 39. (Doc. 4, Am. Compl. ¶ 21; *see also* Doc. 4-8, Pls.' Ex. H.) Plaintiffs assert that Weston et ux., RPI, Wells, and the Defendants as successors of record under the quitclaim deeds, had no identifiable or valid interest in the Western Shore Strip for four (4) reasons:

> (1) the Weston Deed fails to adequately describe the land which Weston attempted to retain insofar as the terms "highest flow of water and the natural margins of said Pond" are ambiguous and the parcel which Weston attempted to retain therefore cannot be identified with certainty;
>
> (2) the ambiguity in the Weston Deed must be construed against Edward Weston as the grantor;
>
> (3) both of the quitclaim deeds purport to describe the subject premises as "the land situated between the *highest flow* of water of Jones Pond and Marsh Pond on the one hand and the margin of the flow of Marsh Pond (now Mud Pond) and the *natural western margin* of Jones Pond (now Lake Ariel) on the other hand," but the terms "highest flow," the "margin of the flow," and the "natural western margin" are too ambiguous for the parcel to be conveyed to be identified with certainty; and
>
> (4) assuming that the parcel intended to be retained under the Weston Deed and conveyed by the quitclaim deeds is capable of being located, the resulting parcel is of necessity extremely long, very narrow, landlocked and without any practical utility or value whatsoever, and such an unreasonable interpretation of the Weston Deed is prohibited under Pennsylvania law.

(*See* Doc. 4, Am. Compl. ¶ 22.)

Defendants argue that *res judicata* and collateral estoppel bar Plaintiffs from seeking an order determining that Defendants did not acquire any interest in the Western Shore Strip because this Court has already entered judgment in favor of Defendants in the Prior Action as to record title of the South Strip (a portion of the Western Shore Strip). The doctrines of *res judicata* and collateral estoppel serve to preclude the litigation, respectively, of claims and issues that have previously been litigated. *Matternas v. Stehman*, 434 Pa. Super. 255, 261 (1994).

The doctrine of *res judicata* holds that when "a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the

12

suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation." *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 498 (1974); *see also Mintz v. Carlton House Partners, Ltd.*, 407 Pa. Super. 464, 474 (1991) ("A final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action."). *Res judicata* applies when two (2) actions have the following comment elements: (1) identity of the thing sued upon, (2) identity of the cause of action, (3) identity of the parties, and (4) identity of the capacity of the parties. *Bearoff*, 458 Pa. at 497; *see also Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 668 F.2d 166, 170-71 (3d Cir. 1982) (quoting *Duquesne Slag Prods. Co. v. Lench*, 490 Pa. 102, 105 (1980)) (same); *Callery v. Municipal Auth.*, 432 Pa. 307, 312 (1968) ("The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights."). Rather than resting on the specific legal theory invoked, *res judicata* turns on the essential similarity of the underlying events giving rise to the various legal claims, although a clear definition of that requisite similarity has proven elusive. *Davis*, 688 F.2d at 171. *Res judicata* forecloses not only all issues that were actually litigated in a previous action, but all issues that **could** have been litigated in the previous action. *See, e.g.*, *Matternas v. Stehman*, 434 Pa. Super. 255, 266-67 (1994) ("[W]hile *res judicata* will bar subsequent claims that could have been litigated in the prior action, but which actually were not, collateral estoppel will bar only those issues that actually were litigated in the prior proceeding.") (citations omitted).

However, unlike *res judicata*, collateral estoppel only forecloses issues that were **actually litigated** in a previous action. *Matternas*, 434 Pa. Super. at 266-67. The Third Circuit has established four (4) standard requirements for the application of collateral estoppel: (1) the identical issue was previously adjudicated, (2) the issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party

13

being precluded from re-litigating the issue was fully represented in the prior action. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).

Here, Plaintiffs may not seek an order determining that Defendants did not acquire any interest in the Western Shore Strip because this Court has already entered judgment in favor of Defendants in the Prior Action as to record title of the South Strip, which is part of the Western Shore Strip. *See Ariel Land Owners, Inc. v. Dring*, No. 3:cv-01-0294, 2008 WL 189644, at *15 (M.D. Pa. Jan. 18, 2008) ("Asaro/Dring have established their ownership by record title to the west shore reservation of the South Strip to a width of 2.4 feet."). Therefore, Defendants' motion to dismiss this claim will be granted.

### 2. Plaintiffs' Premises

Count II also seeks an order determining that Plaintiffs acquired title to Plaintiffs' premises free and clear of any interest of Defendants therein. (Doc. 4, Am. Compl. ¶ 26.) Plaintiffs assert that they are "bona fide purchasers for value" having acquired title to Plaintiffs' Premises without actual or constructive notice of the alleged reservation in favor of Edward W. Weston, et ux. purportedly conveyed pursuant to the quitclaim deeds. (*Id.* ¶ 23.) "Plaintiffs' Premises" consist of six (6) parcels outlined in Exhibit A of Plaintiffs' Amended Complaint. (*See* Doc. 4-1, Pls.' Ex. A.) This relief is also barred by *res judicata* because this Court has already determined in the Prior Action that the alleged property was conveyed from Wells College and RPI to Defendants by properly recorded quitclaim deeds and that Defendants therefore had ownership of the property. *See Ariel Land Owners, Inc. v. Dring*, No. 3:CV-01-0294, 2008 WL 189644, at *14-*15 (M.D. Pa. Jan. 18, 2008). Moreover, the Weston Deed was recorded in 1862 and served as notice to subsequent buyers in that chain of title (viz Plaintiffs). Thus, Defendants' motion to dismiss this claim will be granted.

### 3. Prescriptive Easement

Count II also seeks, in the alternative, an order determining that any interest that Defendants might have in the Western Shore Strip is subject to a prescriptive easement

in favor of Plaintiffs over the portion of the North Strip adjoining the lands of the Diefenderfers. A prescriptive easement "is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of 21 years." *McNaughton Props., L.P. v. Barr*, 981 A.2d 222, 225 n.2 (Pa. Super. 2009); *see also McCormick v. Camp Pocono Ridge, Inc. II*, 781 F. Supp. 328, 332 (M.D. Pa. 1991) ("An easement by prescription arises by adverse, open, continuous, notorious and uninterrupted use of land for a period of twenty-one years."). The burden of proving a prescriptive easement is on the party seeking to enforce it, *Keefer v. Jones*, 467 Pa. Super. 544, 548 (1976), and clear and positive evidence is required to prove an easement by prescription, *Adshead v. Sprung*, 248 Pa. Super. 253, 256 (1977).

In order to satisfy the continuous possession for twenty-one (21) years requirement, a landowner may "tack" the period of use by her predecessor in title on to her own period. *McCormick*, 781 F. Supp. at 332. "Tacking" is only permissible, however, where privity exists between the adverse possessors. *Id.* "Privity" denotes merely a "succession of relationship to the same thing." *Lednak v. Swatsworth*, 33 Pa. D. & C. 3d 535, 537 (Pa. Com. Pl. 1984). The successive occupants must claim through their predecessors, and not independently, to make the holding continuous for the required period. *Id.* at 537-38. An adverse possession begun and continued for a time must be transferred to a successor in some lawful manner in order to be available to the successor. *Id.* (citing *Gerhart v. Hilsenbeck*, 164 Pa. Super. 85, 89 (1949)).

Here, there is only one allegation in the Amended Complaint that supports Plaintiffs' claim for a prescriptive easement. This allegation, in its entirety, reads as follows:

> 25. The Plaintiffs, and their predecessors in title as the result of tacking, have occupied and possessed the Western Shore Strip allegedly conveyed to the Defendants pursuant to the Quitclaim Deeds in an open, notorious, visible, hostile and continuous manner, including but limited to use for access to Lake Ariel, a beach, boathouse, dock and related facilities, for a period in excess of 21 years and therefore hold an easement by prescription by virtue of the doctrine of adverse

15

>possession.

(Doc. 4, Am. Compl. ¶ 25.)  This conclusory allegation fails to adequately plead a claim for a prescriptive easement.  Plaintiffs have failed to allege any specific facts demonstrating their open, notorious, visible, hostile, and continuous use of the property in question.  They have also failed to allege any specific facts demonstrating how their predecessors in title have used the property.  Although detailed factual allegations are not required, *see Twombly*, 550 U.S. at 555, mere conclusory statements will not survive a motion to dismiss, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Here, the Amended Complaint does not include any *factual* allegations to support their conclusory allegation that Plaintiffs and their predecessors in title have "occupied and possessed the Western Shore Strip . . . in an open, notorious, visible, hostile and continuous manner."  This fails to give Defendants "fair notice" of the grounds upon which Plaintiffs' claim for a prescriptive easements rests.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Therefore, Defendants' motion to dismiss this claim will be granted.  However, Plaintiffs may amend their Complaint to replead this claim in accordance with this Memorandum.

**C.     Count III - Alternative Claim for Damages**

Count III sets forth an alternative claim for damages resulting from the alleged failure of Defendants to perform their obligations under the Settlement Agreement.  Defendants seek dismissal of this claim because Plaintiffs failed to allege the satisfaction of all the conditions precedent to any performance by Defendants under the Settlement Agreement.  However, as discussed above, this Court finds that there were no conditions precedent to Defendants' obligation to Plaintiffs under the Settlement Agreement and that there was no material breach of the Settlement Agreement by

16

Plaintiffs that would excuse performance by Defendants.  Therefore, Defendants' motion to dismiss this claim will be denied.

### III. Conclusion

For the above stated reasons, the motion to dismiss filed by Defendants Lori Dring and Nancy Asaro will be granted in part and denied in part.

An appropriate order follows.

<u>October 6, 2015</u>  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge